E-FILED
Monday, 16 March, 2026 04:51:37 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PERRY E. NIXON,<br>Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-3348 |
| | ) | |
| FRANK BISIGNANO, Commissioner<br>of Social Security,<br>Defendant. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action brought under 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Acting Commissioner of the Social Security Administration[1] (the "Commissioner"). On November 12, 2021, Plaintiff Perry E. Nixon applied for disability insurance benefits and supplemental security income under the Social Security Act ("SSA") alleging a disability onset of October 17, 2021. The Commissioner, as affirmed by the Appeals Council, adopted the decision made by the Administrative Law Judge (the "ALJ"), denying Nixon benefits because he was not under a "disability" within the meaning of the SSA. The Court affirms the ALJ's decision because it properly considered the record and is supported by substantial evidence.

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration in May of 2025. As a result, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is automatically substituted for his predecessor Carolyn Colvin as the defendant in this lawsuit.

## I.    DISCUSSION

### A. Legal Standard

This Court must determine whether there is "substantial evidence" to support the ALJ's decision that Plaintiff has not been under a "disability" since the date of his social security applications. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). The threshold for substantial evidence "is not high" and "means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek*, 587 at 103). The ALJ's decision need not discuss every piece of evidence but must at least build a "logical bridge from the evidence to his conclusion" to allow the court to meaningfully review his findings. *Id.* at 1053–54 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

### B. Disability Determination

A claimant for benefits is "disabled" within the meaning of Section 1614(a)(3)(A) of the SSA if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration established a five-step sequential evaluation process for determining whether an applicant for benefits is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ determined Plaintiff was not disabled because he could perform work that exists in

significant numbers in the national economy, based on his Residual Functional Capacity ("RFC"),[2] age, education, and work experience. (Tr. 27). Specifically, the ALJ found that despite having several severe impairments, Nixon's RFC allowed him to perform sedentary work with specific exertional, postural, and environmental limitations. (Tr. 22, 24, 27–28).

Nixon argues that (1) the ALJ failed to properly evaluate the opinion evidence of Dr. Josephine Minnicino and the consulting exam of Dr. Raymond Leung under 20 C.F.R. § 404.1520c and (2) the ALJ's RFC determination was not supported by substantial evidence. The Court finds neither contention persuasive. As the analysis below shows, much of Nixon's arguments essentially faults the ALJ for "not provid[ing] a complete written evaluation of every piece of testimony and evidence" and impermissibly asks the Court to reweigh evidence. *Warnell*, 97 F.4th at 1053 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

**(1) The ALJ Properly Considered Evidence from Dr. Minnicino and Dr. Leung**

Dr. Minnicino opined Nixon would need to be absent from work more than 4 days a month, off-task 25 percent or more on a typical workday and take unscheduled breaks of 20 to 30 minutes between 8 to 12 times a day. (Tr. 26). The ALJ found Dr. Minnicino's opinion "partially persuasive" but noted she included minimal explanation supporting the limitations and physical therapy records indicated Nixon's range of mobility and

---

[2] A claimant's RFC represents the most he can perform in a work setting despite his limitations. 20 C.F.R. § 416.945(a)(1). The ALJ calculates RFC as part of the sequential evaluation process based on all relevant evidence. *Id.* § 416.945(a)(3).

hypermobility had improved. (*Id.*). Nixon argues the ALJ mischaracterized the physical therapy records in question and ignored parts of them. But those records do indicate Nixon was feeling "some[what] better overall" and had some improvements to his mobility. (Tr. 529–31). The ALJ's evaluation of the records was consistent with regulations requiring ALJs to consider the "supportability" of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c(c)(1).

Nixon also contends the ALJ ignored his responses to a physical therapy pain questionnaire where he indicated pain prevented him from sitting for more than 10 minutes. (Tr. 535). However, the ALJ noted Nixon's "statements concerning the intensity, persistence and limiting effects of the[] symptoms [from his impairments] are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23). Furthermore, those same physical therapy records state Nixon "tolerated . . . treatment/therapeutic activity with minimal complaints of pain and difficulty." (Tr. 530). The ALJ was not required to highlight one question from a pain questionnaire when concluding on balance that Nixon's physical therapy records demonstrate he had exhibited some improvement. As such, the ALJ properly referred to other evidence in sufficient detail when justifying his reason for finding Dr. Minnicino's opinion only "partially persuasive." *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) (finding an ALJ can provide a "partial summary of select evidence").

Nixon argues the ALJ also failed to discuss how a consultative examination from Dr. Leung supported Dr. Minnicino's opinion and undermined the physical therapy

records. While discussing Dr. Minnicino's opinion, the ALJ noted Dr. Leung's examination indicated "some reduction in the range of motion," "mild reduction in lower extremity strength," but "no neurological deficits." (Tr. 26). The ALJ cited Dr. Leung's examination multiple times throughout his opinion and factored the examination findings into his reasoning. He did not, as Nixon claims, "ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Next, Nixon claims the ALJ, "whether by accident, or intentional omission" left out a finding from a spinal MRI report. (Doc. 8 at 8). Specifically, the ALJ did not expressly note Nixon has "severe spinal canal stenosis at L5-S1 and moderate to severe spinal canal stenosis at L4-L5 levels with impingement of thecal sac and nerve roots." (*Id.*). However, the ALJ discussed the MRI in question and noted prominent degenerative changes at L5-S1 and L4-L5. (Tr. 23). He was not obligated to specifically discuss the finding Nixon highlights. *Warnell*, 97 F.4th at 1053 (stating the ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.").

Nixon argues the ALJ's statement that some examinations show "no foot drop or atrophy, negative straight-leg raising bilaterally, and normal gait" is not supported by Dr. Minnicino's opinion. However, the record does indicate *some* examinations support the ALJ's statement. (*See* Tr. 454 (finding "[n]o foot drop or muscle wasting")); (Tr. 581

(finding gait to be normal and negative straight leg raising bilaterally)).[3] The ALJ also acknowledged evidence such as Dr. Minnicino's opinion demonstrates Nixon does have serious impairments. Thus, the ALJ did not exclusively focus on evidence clearly supporting his decision or impermissibly construe medical evidence to reach his conclusion. (*See, e.g.,* Tr. 23 (noting some examinations "show tenderness to palpation" and "decreased range of motion")). The ALJ was not "playing doctor" as Nixon claims. He was considering a large record containing evidence from several medical professionals. This case is not like *Akin v. Berryhill*, where an ALJ decision was reversed because an ALJ interpreted MRI results himself. 887 F.3d 314, 318 (7th Cir. 2018). Here, the ALJ properly considered expert opinions and at times permissibly found some expert evidence more persuasive than others.[4]

### (2) The ALJ's Decision is Supported by Substantial Evidence

Nixon's next line of argument is that the ALJ's RFC determination was not supported by substantial evidence. While he contends the ALJ ignored his subjective complaints, the record shows the ALJ did consider them and simply found them to be largely unpersuasive. He summarized many of the difficulties Nixon reported to have

---

[3] Even if the ALJ had included citations to the wrong part of the record, doing so would not be cause for remand because the ALJ's opinion is adequately supported by substantial evidence and does not omit any contrary line of evidence. The Court "will not remand a case to the ALJ for further specification where [it is] convinced that the ALJ will reach the same result. . . . That would be a waste of time and resources for both the Commissioner and the claimant." *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (citation omitted).

[4] The ALJ also didn't fail to consider Nixon's medical issues in combination with each other. *See Goins v. Colvin,* 764 F.3d 677, 681 (7th Cir. 2014) (declaring that ALJs "have to consider an applicant's medical problems in combination"). For example, he discusses how Nixon's obesity affects his ability to walk in combination with his other conditions. (Tr. 25).

and stated: "claimant's statements concerning the intensity, persistence and limiting effects of the[] symptoms [from his impairments] are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22, 23). He also noted that "[t]he claimant's subjective complaints have been accommodated to the greatest extent possible consistent with the objective evidence of record." (Tr. 24). Nixon argues the language is merely boilerplate and belies a failure to genuinely engage with his subjective complaints. The Court disagrees. The ALJ summarized several of Nixon's subjective complaints with specificity and discussed how some of his subjective complaints were not supported elsewhere in the record. (*E.g.* Tr. 24 (finding examination evidence stated Nixon has *no* diarrhea despite Nixon's claim he has diarrhea 9 to 12 times a day)). These summaries and discussions show the ALJ went beyond "meaningless boilerplate" and did not impermissibly disregard Nixon's subjective complaints. *Berryhill*, 887 F.3d at 318.

Nixon also claims the ALJ impermissibly ignored testimony from the vocational expert. During the vocational expert's testimony, the ALJ posed two hypotheticals wherein he outlined two sets of job limitations and asked whether someone with specific limitations could find competitive work in the national economy. (Tr. 61–63). The vocational expert testified there was work for individuals with the first set of limitations but not the second. After noting Nixon's RFC allowed him to perform sedentary work with various limitations, the ALJ was not required to thoroughly engage with the second hypothetical because he found Nixon's limitations were closer to the first hypothetical. (*See* Tr. 22).

Finally, Nixon highlights various pieces of evidence that cut against the ALJ's ultimate finding. Yet this scrutiny fails to show how the ALJ's decision was unsupported by substantial evidence. The ALJ properly considered Nixon's improvements during physical therapy, evaluated conflicting evidence, acknowledged Nixon's impairments and work limitations, and grounded his decision in the record. *See Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) ("Even claimants with substantial impairments are not necessarily entitled to benefits . . . ."); *Gedatus*, 994 F.3d at 901 (upholding a decision where an ALJ noted evidence favorable to the claimant and "sided with [the claimant] to a degree by determining she had severe impairments and needed some limitations on even 'light' duties"). As previously stated, the ALJ "need not address every piece or category of evidence identified by a claimant." *Warnell*, 97 F.4th at 1053.

## II.    CONCLUSION

Accordingly, the Court finds the ALJ properly applied the law and supported his decision with substantial evidence. For these reasons, the ALJ's decision is AFFIRMED. The Clerk is DIRECTED to substitute Commissioner Frank Bisignano for Defendant Carolyn Colvin and enter judgment in favor of Defendant Commissioner Frank Bisignano. Case is closed.

ENTER: March 16, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE